IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 3:17-CR-123 |
| ) | |
| CASEY CHARLES SPAIN, ) | |
| ) | Hon. John A. Gibney, Jr. |
| *Defendant.* ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in the Indictment and the following facts are true and correct, and that had the matter gone to trial, the United States could have proven each of them beyond a reasonable doubt.

1. On August 11, 2017, the defendant, CASEY CHARLES SPAIN, a 28-year-old United States citizen, was released from the Virginia Department of Corrections, Greensville Correctional Center, after serving over seven years of incarceration. SPAIN's felony conviction was for abduction with intent to defile in the Henrico County Circuit Court, Virginia. As a convicted felon, SPAIN was prohibited from owning, possessing or transporting firearms.

2. The FBI received information from officials and individuals within the Virginia Department of Corrections indicating that, while incarcerated, SPAIN became radicalized and expressed a desire to engage in acts of violence. Additionally, the FBI received information that SPAIN swore a pledge of loyalty, commonly known as *bayat*, to Abu Bakr al-Baghdadi, the leader of the Islamic State of Iraq and al-Sham ("ISIS"), a designated Foreign Terrorist Organization. SPAIN also obtained a tattoo of the ISIS flag on his back.

3. Because of this and other information, the FBI began conducting surveillance of SPAIN immediately upon his release from state prison. This surveillance included making covert contact with SPAIN with FBI undercover employees ("UCE"), as well as the use of a

Confidential Human Source ("CHS"), who was introduced to SPAIN on or about August 19, 2017. Since that date, SPAIN spoke on multiple occasions to the CHS about his strong desire to obtain a firearm, specifically a handgun.

4. On August 29, 2017, an FBI UCE ("UCE 1") discussed with SPAIN, via a cellular telephone messaging application, general plans for UCE 1 to sell a semiautomatic gun to SPAIN. UCE 1 told SPAIN that he could obtain a firearm for him in several days' time.

5. The following day, August 30, 2017, the CHS and a second FBI UCE ("UCE 2") met with SPAIN and learned that SPAIN had done his own online shopping on the website www.vaguntrader.com to obtain a weapon. SPAIN described to the CHS his intention to purchase a 9 mm semiautomatic handgun with a 50-round barrel canister and that he had made arrangements to buy the handgun from an individual online. SPAIN showed his smartphone to UCE 2 to share with UCE 2 parts of his conversation with the reported seller of another firearm, and showed a picture to UCE 2 of the gun SPAIN intended to purchase from the seller. UCE 2 described the firearm SPAIN showed him on his smartphone as a magazine-fed handgun with multiple magazines.

6. Because of SPAIN's criminal history, his stated intentions, and the impatience he exhibited with regard to obtaining a gun, the CHS – as part of a controlled FBI undercover operation – offered to provide SPAIN with what the CHS described as his own personal weapon. In fact, it was a 9 mm Glock, Model 26, semi-automatic pistol, with serial number plate removed, which previously had been shipped and transported in interstate and foreign commerce. For safety reasons and unbeknownst to SPAIN, FBI personnel had rendered the firearm inert.

7. In the early morning hours of August 31, 2017, as part of the undercover operation, the CHS and an FBI UCE ("UCE 3") met SPAIN outside of his residence, located in

2

the Eastern District of Virginia and within the jurisdiction of this Court. At that meeting, the CHS provided SPAIN the above-described firearm and UCE 3 observed SPAIN take possession of it, and SPAIN was subsequently arrested by the FBI Richmond SWAT members. SPAIN initially attempted to flee and escape arrest by running and jumping a nearby fence, but FBI SWAT members pursued SPAIN on foot and quickly apprehended him. The agents also recovered a mobile phone and the above-described firearm. SPAIN had discarded the mobile phone during the foot-chase and had thrown the firearm over the fence that he was attempting to climb moments before SWAT members arrested him.

8. This statement of facts includes those facts necessary to support the defendant's guilty plea. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

9. The defendant committed the acts recounted above and as set forth in the Indictment knowingly and unlawfully, without legal justification or excuse, with the specific intent to do that which the law forbids, and not by mistake, accident, or any other reason.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____
Raj Parekh, Trial Attorney
U.S. Department of Justice
Counterterrorism Section
National Security Division
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

By: _____
Brian R. Hood
Assistant U.S. Attorney
Eastern District of Virginia
919 East Main Street
Suite 1900
Richmond, Virginia 23219

3

Defendant's Stipulation and Signature:

I have consulted with my attorney regarding this Statement of Facts. I knowingly and voluntarily agree that each of the above-recited facts is true and correct, and that had this matter gone to trial, the United States could have proven each one beyond a reasonable doubt.

_11/3/17_
Date

_Casey Spain_
CASEY CHARLES SPAIN
*Defendant*

Defense Counsel's Signature:

I am counsel for the defendant, CASEY CHARLES SPAIN. I have carefully reviewed this Statement of Facts with him and, to my knowledge, his decision to agree to this Statement of Facts is an informed and voluntary decision.

_11/3/17_
Date

Paul Gill, Esq.
*Counsel for CASEY CHARLES SPAIN*