IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 3:17CR123 |
| ) | |
| CASEY CHARLES SPAIN ) | |

**DEFENDANT'S OBJECTION TO PRESENTENCE REPORT[1]**

Defendant, by counsel, hereby objects to the application in the presentence report (PSR) of a 4-level enhancement in Guideline calculations under USSG § 2K2.1(b)(4)(B) for the subject firearm having "an altered or obliterated serial number." *See* PSR ¶ 29. If this objection is sustained, the advisory Guideline range will drop from 70 to 87 months, to 46 to 57 months.

The stipulated evidence is that federal authorities arranged for the controlled delivery of a firearm to Mr. Spain on or about August 31, 2017. Paragraph 6 of the agreed Statement of Facts in support of the defendant's guilty plea indicates the "serial number plate was removed," which counsel understands was done by federal agents to the firearm, prior to delivering it to Mr. Spain, after which he was promptly arrested. Mr. Spain did not ask for that feature, or know about it.

*The plain words of the Guideline provision do not reach these facts*

The word "removed" is conspicuously absent in the words of USSG § 2K2.1(b)(4)(B) itself, or application note 8(B) construing it. By contrast, 18 U.S.C. § 922(k) makes it unlawful in certain circumstances to transport, ship, receive, or possess a firearm which has had the serial number "removed, obliterated, or altered."

---

[1] This filing includes in addition to an objection, a related variance/departure argument about the same Guideline provision. It is presented here because it concerns the same subject matter.

1

The inclusion of "removed" in the statute indicates some distinction in meaning between the three terms of the statute. The exclusion of "removed" in the Guideline provision means the agreed facts here---entire removal of the plate on which the serial number existed, without any alteration or obliteration of that number---do not satisfy the narrower Guideline provision encompassing only "obliterated" or "altered" serial numbers. The enhancement therefore should not apply.

"In interpreting a [sentencing] guideline, ordinary rules of statutory construction apply." *United States v. Rouse*, 362 F.3d 256, 262 (4th Cir.), *cert. denied*, 543 U.S. 867 (2004).

Treating "removed" as meaning nothing more than "obliterated" or "altered" ignores distinctions in the plain meaning of those terms. "Obliteration" implicates a physical destruction of something, as by the mechanical or chemical means typically reflected by the subject of 2K2.1(b)(4)(B) enhancements. *See* Black's Law Dictionary 971 (5th ed. 1979) ("Obliteration" defined as ""to destroy; wipe or rub out; erase. Erasure or blotting out of written words . . . ."); *see also id.* at 71 ("Alteration" defined primarily as "Variation; changing; making different."), 375 ("Deface" means "To mar or destroy . . . the physical appearance of . . . characters . . . by obliteration, erasure, cancellation, or superinscription . . . .").[2]

Treating "removed" as meaning nothing more than "obliterated" also treats "removed" as meaningless surplusage. That violates the "settled principle of statutory construction canon that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *See, e.g., Canal Ins. Co. v. Barker*, 358 F. App'x 470, 473 (4th Cir.Dec. 31, 2009); *accord Hubbard v. Henrico Ltd. Partnership*, 497 S.E.2d 335, 338

---

[2] Would this debate exist if possessing a stolen motor vehicle was a federal crime, and an enhancement applied if a subject vehicle had "altered or obliterated wheels," when the vehicles totally lacked wheels?

2

(1998).[3] The word "removed" has a meaning different from "obliterated," and it is a term omitted from the Sentencing Commission's initial 1-level enhancement as originally adopted, although present in the enhancement as originally proposed.

Courts that use "obliterated" as interchangeable with "removed," in connection with the disputed enhancement, seem to do so without thought or intention, and primarily without addressing the precise objection made here. In *United States v. Statham*, 581 F.3d 548, 551, 553 (7th Cir. 2009), for example, the opinion makes loose references to serial numbers being "removed" from weapons. But the evidence was that serial numbers were "scratched . . . off" enough to be illegible *id.* at 551, and the district court, as finder of fact, characterized some weapons as having "obliterated" serial numbers, not "removed" ones. *Id.* at 553; *see also United States v. Settle*, 394 F.3d 422, 435 (6th Cir.) (court referred to "removing" numbers in discussing *another* case, but one before it did not involve the question raised here, and the *other* case seemed to involve numbers mechanically or chemically "obliterated" but later "restored" by ATF),[4] *remanded on other grounds*, 545 U.S. 1102 (2005); *United States v. Sasso*, 59 F.3d 341,

---

[3]     There is a long history of using all three terms---removed, obliterated, and altered---in both the statutory language of 18 U.S.C. § 922(k), and regulations concerning the statute. *See, e.g.,* 3 Fed. Reg. 1868-69 (1938) (quoting statute including "removed, obliterated, or altered" serial numbers, and adopting regulations for serial number mandate); 22 Fed. Reg. 4851, 4855 (1957) (proposed rulemaking applying to firearm with serial number "removed, obliterated, or altered").
    Likewise, preliminary draft Sentencing Guidelines proposed an enhancement in weapon offenses if the firearm had the serial number "removed, obliterated, or altered." Preliminary Guideline K221(a)(5), *found in* 51 Fed. Reg. 35080, ___ (1986). By the next year, the trilogy of terms was dropped to "altered or obliterated," *see* 52 Fed. Reg. 3920, ___ (1987) (commentary to proposed K221 through 224, and the initially adopted Guideline 2K2.1 kept the same two adjectives, not 3. *See* USSG § 2K2.1(b)(1) (1987) (adopting *1-level* increase for firearm with "altered or obliterated serial number.").

[4] *See United States v. Roxborough*, 99 F.3d 212, 213 (6th Cir. 1996), *discussed in Settle*, 394 F.3d at 435.

345-46 (2d Cir. 1995) (noting evidence of tools used to grind down serial numbers, and describing 2K2.1(b)(4)(B) as an enhancement for "defacement of serial numbers").

To the extent the United States relies on Ninth Circuit precedent to support its position, it still relies on unusual cases with distinguishable facts.

In *United States v. Carter*, 421 F.3d 909, 910 (9th Cir. 2005), the Ninth Circuit held that a serial number "on the firearm" the defendant possessed, "discernable with the use of microscopy," but "defaced" so as to be "not decipherable by the naked eye," was an altered or obliterated serial number within the Guideline enhancement. The court also rejected the defendant's argument that the defacement should not apply because it wasn't sufficient to make the weapon "untraceable." *Id.* at 910. It went on to construe various dictionary definitions of "obliterated" and "altered" to encompass the "defacement" relevant there, but agreed that the legislative history of the Guideline enhancement "does not specify why [it] was enacted or why the phrase 'altered or obliterated' was chosen" over "removed, altered, or obliterated.". *Id.* at 913-14.

Unlike *Carter*---indeed, unlike most of the reported case law involving the applicable enhancement---the present objection does not involve a serial number mechanically or chemically attacked in a way that falls neatly within the terms "obliterated" or "altered" in a physical way. It involves a serial number on a plate removed by federal agents, not a serial number physical or chemically altered or destroyed. The serial number itself was never "defaced." *Carter* also goes on to elaborate about judicial "interpretations of purpose" for the subject enhancement. *See id.* at 914-16. Those cases again involved dissimilar facts, and different arguments, and in any event reliance on judicial divination of "purpose" to bootstrap a word like "remove" into the different terms "obliterate" or "alter," contradicts the role of this

Court in statutory and Guideline construction. *See, e.g., United States v. Medina*, 718 F.3d 364, 367 (4th Cir. 2013); *United States v. Luskin*, 926 F.3d 372, 376 (4th Cir.), *cert. denied*, 502 U.S. 815 (1991).

Finally, the government's anticipated reliance on *United States v. Romero-Martinez*, 443 F.3d 1185 (9th Cir. 2006), is also misplaced. The case is interesting in that it involved a similar weapon---a different model Glock---which was "missing entirely" the serial number that weapon was supposed to have cast as a metal plate affixed to the frame of the weapon, and included serial numbers "ground off" from the slide and barrel of the weapon. *Id.* at 1187. The case also involved an unusual jury trial just on the 2K2.1(b)(4)(B) enhancement, and jury instructions that "altered means to have changed or made different. Obliterated means to have removed completely or erased." Defendant objected to the instruction and instead proposed a dictionary definintion defining obliterated as "To do away with completely so as to leave no trace. To wipe out, rub off, or erase (writing or other markings)." *Id.* (internal quotations omitted). The jury found beyond a reasonable doubt that the gun possessed an "altered or obliterated" serial number, but did not specifically indicate which serial number it believed was altered or obliterated. On appeal, as relevant here, defendant challenged the inclusion of "removed" within the definition of "obliterated." *Id.*

On appeal, the Ninth Circuit relied solely on *Carter*, discussed above, to justify its conclusion that the district court's instruction that "'obliterated' means to have removed completely or erased' easily falls within the definition established by *Carter*." *Id.* at 1189. This Court should not rely on the claimed purpose of the enhancement found by the Ninth Circuit in *Carter* to justify a conclusion that runs contrary to the plain meaning of the words used in the enhancements, words that if ambiguous should be construed in favor of the defendant.

Finally, *Romero-Martinez* did offer dictionary definitions of "obliterate" that included "remove." *See id.* The problem is, those definitions are from dictionary editions much later than the 1979 Black's Law Dictionary definition of "obliterated" above, which lacks any form of the word "remove." Nor did the Ninth Circuit consider at all the observation made here, which is that the Guideline enhancement deliberated omitted the word "removed" from the 18 U.S.C. § 922(k) language which did include "obliterated" and "altered."

In sum, the foundational canons of statutory construction support the defendant's objection. There is no binding legal authority to the contrary. Even the non-binding legal authorities the government has discussed with undersigned are premised on flawed or incomplete reasoning, and fail to recognize that the applicable Guideline intentionally omitted the word "removed" from the otherwise identical language regarding serial numbers in the Guideline's statutory sister. For these reasons, the defendant's objection should be sustained.

### *Alternatively, the enhancement is excessive and unreasonable in the circumstances*

Though this Court is required to consider the Guidelines and resolve Guideline disputes, Guidelines are no longer binding, and this Court may reject Guidelines or portions thereof on policy grounds, especially for Guidelines which do not appear empirically based. *See, e.g., Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *United States v. Tolentino-Tolentino*, 599 F. App'x 83, 84 (4th Cir. April 2, 2015) ("It is well-established that a district court may consider policy-based objections to the Guidelines.").

With these principles in mind, the following observation from a published district court decision is worth quoting at length:

> [D]efendant received a 4 level enhancement for obliterated serial number under § 2K2.1(b)(4)(B), ***despite the lack of any evidence that he removed the number, directed that it be removed, or even knew it had been***. ***The Commission*** dispensed with a mens rea requirement for this enhancement, see U.S.S.G. § 2K2.1 cmt. n.8(B), but ***never***

6

> *satisfactorily explained why an increase of this extent should apply on a strict liability basis*. Under § 3553(a), *the court may appropriately distinguish between defendants who knowingly remove serial numbers or knowingly possess weapons with obliterated numbers, and defendants who lack such knowledge. Further, the Commission has significantly increased the extent of this enhancement without providing much explanation.* Originally, the guideline provided for a 1 level enhancement. In 1989, the Commission increased it to 2 levels "to better reflect the seriousness of the offense." United States Sentencing Commission Guidelines Manual, Appendix C — Volume I 101 (Amendment 189). In 2006, the Commission doubled the enhancement again, to 4 levels, stating that the "increase reflects both the difficulty in tracing firearms with altered or obliterated serial numbers, and the increased market for these types of weapons." United States Sentencing Commission Guidelines Manual, Supplement to Appendix C 177 (Amendment 691). But police have developed methods to restore obliterated serial numbers in an effort to trace guns and curb gun trafficking, Rachana Bhowmik, Aiming for Accountability: How City Lawsuits Can Help Reform an Irresponsible Gun Industry, 11 J.L. & Pol'y 67, 113 (2002); see, e.g., United States v. Settle, 414 F.3d 629, 633 (6th Cir. 2005), and in any event, in a case like this one with no trafficking aspect, it is hard to see why a 4 level enhancement is needed to provide just punishment. In the present [**10] case, the enhancement nearly doubled the range.

*United States v. Jordan*, 740 F. Supp. 2d 1013, 1016-17 (E.D. Wis. 2010).

Here, as in *Jordan* (and no matter how the enhancement is construed), there is no evidence that the defendant knew the serial number was obliterated or altered, or attempted to obliterate or alter any serial number, or even asked for a gun with that feature. Indeed, but for the actions of law enforcement officers prior to their controlled delivery of a disabled firearm to the defendant, we would not be discussing this enhancement at all.[5] In addition, the 4-level enhancement to which the obliterated/altered serial number enhancement has bloated, boosts the Guideline range to 70 to 87 months from the 46 to 57 months that would otherwise apply. Here,

---

[5] Defendant assumes for present purposes that a government agent's removal of a serial number plate prior to the weapon's controlled delivery was not outrageous government conduct in the nature of sentencing manipulation. *See United States v. Jones*, 18 F.3d 1145, 1154-55 (4th Cir. 1994). Discovery yields no clue for why the plate was removed, however. It would seem that in the unlikely event the Mr. Spain could even escape from the many federal agents at the delivery, with a firearm which agents had made inoperable, agents would prefer he have a firearm identifiable by serial number, than one from which the number had been removed.

as in *Jordan*, then, the Court can and should appropriately depart or vary on policy grounds, if it does not sustain the objection.

                                      Respectfully submitted,
                                      CASEY CHARLES SPAIN

                                      By: _____s/_____
                                                      Counsel

Paul G. Gill
Va. Bar # 31461
Counsel for the Defendant
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
Ph. (804) 565-0870
Fax (804) 648-5033
Email: paul_gill@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following: Brian Hood (Brian.Hood@usdoj.gov), and Raj Parekh (Raj.Parekh@usdoj.gov).
9

                                      By: _____s/_____
                                                        Counsel

Paul G. Gill
Va. Bar # 31461
Counsel for the Defendant
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
Ph. (804) 565-0870
Fax (804) 648-5033
Email: paul_gill@fd.org